UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARAH WITKOWSKI and                                   **REPORT AND**
SCOTT WITKOWSKI,                                          **RECOMMENDATION**
                              Plaintiffs,

v.                                                                       16-CV-00856-LJV-JJM

NIAGARA JET ADVENTURES, LLC,

                              Defendant.
_____

         Plaintiffs Sarah and Scott Witkowski seek to recover for personal injuries allegedly sustained by Sarah Witkowski on July 15, 2016 while they and their sons were passengers on a jet boat operated by defendant Niagara Jet Adventures, LLC in the lower Niagara River. Plaintiffs allege that the injuries were caused by Niagara Jet Adventures' negligence (Amended Complaint [11], ¶¶13-17, 21) or "willful and reckless" conduct (id., ¶¶23, 25-27, 31). They contend that Sarah Witkowski was injured when her husband and son Cole were thrown against her as the boat struck a wave, and that Niagara Jet Adventures improperly allowed the three of them to sit together in an overcrowded manner. Plaintiffs' Response [30], p. 7.

         Before the court is defendant's motion for summary judgment [27],[1] which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [4]. Having heard oral argument on December 15, 2017 [39] and considered the parties' submissions [27, 28, 30, 37, 38], for the following reasons I recommend that the motion be granted in part and denied in part.

---

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to the documents themselves rather than to CM/ECF pagination.

## BACKGROUND

Prior to boarding the boat, each plaintiff executed a document entitled "Release and Waiver of Liability, Assumption of Risk and Indemnity", containing the following provisions:

> "In consideration of participating in whitewater, and, or river tours / cruises with Niagara Jet Adventures, LLC ('Niagara Jet Adventures') I represent that I understand the nature of this experience in a U.S. Coast Guard certified water craft that operates on water . . . .
>
> I fully understand that although Niagara Jet Adventures has made every effort to keep this experience safe, this experience could involve risks of serious bodily injury . . . which may be caused by . . . the conditions in which the experience takes place, or the negligence of any of the 'Releases' listed below; and that there may be other risks either not known to me or not readily foreseeable at this time; and I fully accept and assume all such risks and all responsibilities for losses, costs and damages I incur as a result of my participation in the experience.
>
> I hereby release . . . Niagara Jet Adventures LLC, any sponsors, advertisers . . . (collectively, 'Releases' from all liability, claims, demands, losses or damages . . . caused or alleged to be caused in whole or in part by the negligence of the 'Niagara Jet Adventures' or otherwise . . . . and I furthermore agree that if, despite this release, waiver, of liability, and assumption of risk I . . . make[ ] a claim against Niagara Jet Adventures or any Release, I will indemnify, save and hold harmless the Releases from any loss, liability, damage or cost which any of them may incur as a result of such claim . . . .
>
> I have read this RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNITY AGREEMENT, understand that I have given up substantial rights by signing it and have signed it freely and without any inducement, or assurance of any nature and intend it to be a complete and unconditional release of liability to the greatest extent allowed by law . . . .

[28-8, 28-9].

In moving for summary judgment, Niagara Jet Adventures argues that the Release bars plaintiffs' claim for negligence, and that there is no genuine issue of fact as to whether Niagara Jet Adventures engaged in gross negligence or reckless or willful misconduct. Niagara Jet

Adventures' Memorandum of Law [27-2]. In response, plaintiffs argue that the Release does not apply to claims of negligence per se (plaintiffs' Response [30], Point I), that the enforceability of the Release is governed by New York law rather than federal maritime law (id., Point II), that the Release is unenforceable because Niagara Jet Adventures breached one of its conditions (id., Point III), and that the Release does not bar plaintiff's claims for reckless conduct (id., Point IV).

## DISCUSSION

A.  **May Negligence Per Se be Considered?**

Plaintiffs argue that "The Release Does Not Apply to Plaintiff's Claims for Negligence Per Se Based on Defendant's Violation of a Safety Statute . . . . Negligence per se is based on the violation of a federal safety statute which in itself creates an actionable wrong, in no way dependent upon negligence". Plaintiffs' Response [30], p. 9. However, if negligence per se is "in no way dependent upon negligence", then that theory may not be considered. Neither plaintiffs' original Complaint [1-1] nor their Amended Complaint [11] alleged negligence per se, nor did those pleadings allege that any safety statute had been violated by Niagara Jet Adventures. "Motions for summary judgment should be decided on the claims as pled, not as alleged in motion papers." Northern Shipping Funds I, L.L.C. v. Icon Capital Corp., 998 F. Supp.2d 301, 326 (S.D.N.Y. 2014).

Niagara Jet Adventures argues that "[p]laintiffs' failure to properly plead negligence per se should bar such claims from being raised now for the first time in opposition to a motion for summary judgment". Niagara Jet Adventures' Reply Memorandum of Law [37], p. 9. I agree. "[A] party is not entitled to amend its complaint through statements made in motion papers." Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998). See also Klein v. Boeing Co., 847 F. Supp. 838, 844 (W.D. Wash. 1994) ("Klein never asserted this claim prior to his opposition to Boeing's

motion for summary judgment, nor has he moved to amend his complaint to add such a claim. Thus, this claim is not properly before the court").

**B.     Which Law Governs the Release?**

Plaintiffs admit that "admiralty law governs [their] tort claims, which also provide the basis for admiralty jurisdiction in this case" (plaintiffs Response [30], p. 14), and that "federal courts have generally found that 'operators of inherently risky marine recreational activities may contract to disclaim liability for their own negligence'". Id., *citing* Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100 (W.D.N.Y. 2011).

As in this case, Brozyna involved a claim for personal injuries sustained on a jet boat in the lower Niagara River. Plaintiff "felt discomfort when the boat came down hard in the rapids", and alleged that her injury "occurred as the result of defendant's negligence in the operation of the jet boat excursion, including inadequate warnings about dangerous conditions and inadequate training of the operator". Id., **2-3. As in this case, prior to boarding the boat plaintiff executed a document releasing the boat operator from all "claims . . . by reason of any cause, matter or thing, including negligence on the part of the Company". Id., *1.

In granting defendant's motion for summary judgment, the court reasoned that "[t]here is a substantial body of general maritime law dealing with the enforceability of the type of liability waiver executed by plaintiffs in this case. Indeed, the clear majority of federal cases to consider the issue holds that operators of inherently risky marine recreational activities may contract to disclaim liability for their own negligence". Id., *4 (citing authorities). While recognizing that New York's General Obligations Law §5-326 bars operators of recreational facilities from obtaining pre-accident waivers of liability for their negligence, the court stated that "[i]n the

absence of any showing by plaintiffs that the interests expressed in General Obligations Law §5-326 should be found to predominate over the long-recognized national interest in the development of a uniform body of maritime law . . . the court finds no reason to disturb the commonplace practice of requiring participants in such activities to sign preaccident waivers of liability for damages arising out of the operator's negligence". Id., *5.

Plaintiffs argue that "[i]n contrast to the release in Brozyna, the State of New York has a strong policy interest in applying its law to the Niagara Jet Adventures release . . . . According to the Defendant, the release covered everything related to Niagara Jet Adventures LLC, including shore-based negligence of the Defendant and third parties not specifically named in the contract. Therefore, New York public policy regarding the application of its statutes to its own substantive common law should overrule the interest of a harmonious maritime release doctrine . . . . Indeed, if Plaintiff had suffered an injury while in Defendant's parking lot, there is little doubt that New York law would apply to the release." Plaintiffs' Response [30], p. 18.

I disagree. In determining whether a contract is governed by federal maritime or state law, "the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions". Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 24 (2004). The inquiry "focus[es] . . . on whether the principal objective of a contract is maritime commerce . . . . [T]he shore is now an artificial place to draw a line". Id. at 25. It is beyond reasonable dispute that the principal objective of the Release related to participation in the jet boat excursion on navigable waters, namely the lower Niagara River.[2] Thus, while it is

---

[2] "[T]he entire Niagara River, including the lower portion of the river . . . is navigable as a matter of law . . . . the operation of recreational boats on navigable waters bears a significant relationship to traditional maritime activity." Brozyna, *4.

conceivable that someone could injure themselves by falling in the parking lot, they would not be in

the parking lot but for their intention to participate in the jet boat excursion.

In any event, I need not determine whether New York or federal maritime law would

govern an accident in Niagara Jet Adventures' parking lot, since the accident in this case occurred

on navigable waters. Therefore, for purposes of this motion, the effect of the Release is governed by

federal maritime law - and, as held in Brozyna, under that law a pre-accident release of claims for

negligence is valid.

### C.      Has the Release Been Invalidated by Breach of a Condition?

Plaintiffs argue that Niagara Jet Adventures' statement in the Release that it had

"made every effort to keep this experience safe" was a condition, the breach of which renders the

Release unenforceable. Plaintiffs' Response [30], pp. 19-21. I disagree. "Contract conditions are

generally disfavored . . . and conditions therefore will not be found unless there is unambiguous

language indicating that the parties intended to create a conditional obligation." 13 Williston on

Contracts, §38:13 (4th ed.).

If Niagara Jet Adventures could only avail itself of that waiver of negligence claims

if it had "made every effort to keep this experience safe", then the waiver would be pointless, since

under those circumstances it would not have been negligent. "A contract should not be interpreted

so as to leave any clause expressly included by the parties without effect or purpose . . . neither

should a clause be interpreted in such a way as to make it absurd." Enercomp, Inc. v. McCorhill

Publishing, Inc., 873 F.2d 536, 548-49 (2d Cir. 1989). Accordingly, a condition will not be implied

if it "would impose an absurd or impossible result". Williston, §38:13.

**D.     Is There an Issue of Fact Concerning Gross Negligence/Recklessness?**

"Under New York law, gross negligence is reckless conduct that borders on intentional wrongdoing and is different in kind and degree from ordinary negligence . . . . It does not appear that courts sitting in admiralty apply a materially different standard." Matter of Rockaway Jet Ski, LLC, 2016 WL 8861617, *11 (E.D.N.Y. 2016). "In order to establish a prima facie case in gross negligence, a plaintiff must prove by a fair preponderance of the credible evidence that the defendant not only acted carelessly in making a mistake, but that it was so extremely careless that it was equivalent to recklessness." Travelers Indemnity Co. of Connecticut v. Losco Group, Inc., 204 F. Supp. 2d 639, 644 (S.D.N.Y. 2002).

Plaintiff Scott Witkowski testified that on the day after the accident he received a telephone call from an individual who stated "this is Chris Bohnenkamp, I am the owner of the jet company . . . . And then he said that him and his wife watched the video last night. And he goes I seen how your wife got injured. He said, you know, three in a seat is a big no-no on this boat . . . and my staff knows this. He said and why they put three of you in a seat . . . I don't know . . . and I will definitely have a talk with all them today . . . . He also said, you know, they watched the video, they seen Cole and myself smash into my wife. He said her arms were pinned. She had no way to grab onto the bar, and the force of my son and myself crushed her. And he said . . . she had no way to brace herself." Witkowski deposition [30-2], pp. 272-74 of 349 (CM/ECF pagination).

Plaintiffs argue that "[b]ased on this evidence, [they have] provided an issue of fact regarding Defendant's recklessness". Plaintiffs' Response [30], p. 22. I agree. If the jury finds that Niagara Jet Adventures' staff knew that it was improper to seat three people in a seat but nevertheless allowed that to occur, they could conceivably conclude that such action was grossly negligent or reckless. "[T]here are few cases involving the issue of gross or wanton negligence in

which summary judgment has been invoked." <u>Annotation</u>: "Propriety of Granting Summary Judgment in Case Involving Issue of Gross or Wanton Negligence", 50 A.L.R.2d 1309; <u>Booth v. Bowen</u>, 2008 WL 220067, *4 (D.V.I. 2008) ("[g]ross negligence is generally a question of fact for the jury to decide").

My belief as to plaintiffs' likelihood of ultimately prevailing on this claim is irrelevant. "[S]ummary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial . . . . [T]he responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself." <u>American International Group, Inc. v. London American International Corp.</u>, 664 F.2d 348, 351 (2d Cir. 1981).

**CONCLUSION**

For the foregoing reasons, I recommend that defendant's motion for summary judgment [27] be granted to the extent of dismissing plaintiffs' claims for negligence, but otherwise be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by June 1, 2018. Any requests for extension of this deadline must be made to Judge Vilardo.

A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 18, 2018

       /s/ Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge