UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARAH WITKOWSKI and
SCOTT WITKOWSKI,

        Plaintiffs,

vs.                                                                     Civil Action No.
                                                                                        1:1-cv-00856-LJV-JJM

NIAGARA JET ADVENTURES, LLC,

        Defendant.

---

# PLAINTIFFS SARAH WITKOWSKI AND SCOTT WITKOWSKI'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

# TABLE OF CONTENTS

    **Page**

TABLE OF AUTHORITIES…….....……………………………………………………………..ii

PRELIMINARY STATEMENT……………………….....………………………….....……..1

W.D.N.Y. LOCAL R. CIV.P.72(c) CERTIFICATION…………………………………………..1

FACTUAL & PROCEDURAL BACKGROUND……………………………………………..2

LEGAL STANDARD…………………………………………………………………………….3

ARGUMENT……………………………………………………………………………………..4

    *New York State Law Should Govern the Release*……………………………………….4

    *The Release is Unenforceable Pursuant to 46 U.S.C. § 30509*…………………………..8

    *The Release in Invalid because Defendant Breached a Condition of the Contract*……….10

CONCLUSION…………………………………………………………………………………..12

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir.2004)..............................3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)...............................................3

Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100 (W.D.N.Y. 2011)..........2, 3, 4, 7

Cashman Equip. Corp. v. M/V Godfather, No. 05-6271, 2007 U.S. Dist. LEXIS 21921,
    2007 WL 934537, at *2 (E.D. La. 2007).............................................................8

Charnis v. Watersport Pro, LLC, No. 07-CV-623, 2009 U.S. Dist. LEXIS 76022,
    2009 WL 2581699 (D. Nev. May 1, 2009)...........................................................4

DeLuca v. Royal Caribbean Cruises, Ltd., 244 F.Supp.3d 1342 (S.D. Fla. 2017)....................8

Dumez v. Harbor Jet Ski, Inc., 117 Misc.2d 249 (Sup. Ct. Niagara Cty. 1981).......................4

Estate of Myhra, 695 F.3d at 1242, 1243 (11th Cir. 2018)................................................8

Kossick v. United Fruit Co., 365 U.S. 731 (1961).........................................................4

Hambrook v. Smith, 2016 WL 4408991 (9th Cir. 2016)..................................................7

Johnson v. Royal Caribbean Cruises, Ltd, 449 Fed.Appx. 846 (11th Cir. 2011).....................7

Matter of Pacific Adventures, Inc., 5 F. Supp. 2d 874 (D. Haw. 1998)...............................7

R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir.1984)..............................3

Rockland Exposition Inc. v. Great American Assur. Co., 746 F.Supp.2d 528, 532
    (S.D.N.Y. 2010)...........................................................................................3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)........................3

Theriot v. Bay Drilling Corp., 783 F.2d 527, 538 (5th Cir. 1986).......................................6

United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775, 779
    (11th Cir. 1990)............................................................................................8

iii

**Other Authorities**

46 U.S.C. § 30502 ............................................................................................. 1, 7, 8

46 U.S.C. § 30509 ............................................................................................. 1, 7, 8

Fed.R.Civ.P. 56(a) .................................................................................................. 2, 3

N.Y. General Obligations Law § 5–326 ................................................... 1, 4, 5, 6, 8

## PRELIMINARY STATEMENT

Plaintiffs Sarah Witkowski and Scott Witkowski (hereinafter "Plaintiffs") object to that portion of the Report and Recommendation filed May 18, 2018 [Dkt. No. 40] (hereinafter "R&R"), which recommends summary judgment be granted in favor of the Defendant on the issue of negligence. It is respectfully submitted that the R&R errs in finding that the Release is governed by federal maritime law, that the Release's pre-accident release of claims for negligence is valid pursuant to applicable federal maritime law, and that the Release was not invalidated by a breach of condition.

More particularly, the R&R errs in not first applying maritime choice of law standards to more appropriately apply New York law to the release evaluation> In failing to consider that the public policy of New York State, particularly Section 5-326 of the General Obligations Law, dictates that such a Release should be void, and the applicable choice of law basis for respecting those public policy pronouncements. The R&R gives no consideration to the conflict between the policy of the General Obligations Law and federal maritime law. Nor does it consider the ramifications such a decision has on activities and injuries which are inherently localized.

The R&R further fails to take into account that the specific language used in the Release by Defendant created a condition precedent and Defendant's failure to satisfy such a condition, the breach of which rendered the Release unenforceable. Specifically, the language utilized in the Release was presented in the past tense, thus creating a condition precedent. Additionally, the R&R fails to address or make any mention of the conduct of the Defendant which was in direct conflict with this condition.

## W.D.N.Y. LOCAL R. CIV.P.72(c) CERTIFICATION

The undersigned states that Plaintiff's Objections do raise new legal/factual arguments regarding the applicability of 46 U.S.C. §§ 30502 and 30509. T. Additional legal research revealed the applicability of these sections to the case at bar and it is respectfully requested that the Court address this issue in the interests of justice. Additionally, Plaintiffs expand upon the argument made before the Magistrate Judge and have updated those arguments with additional

case law in support of Plaintiffs' original argument at the time of Plaintiffs' submissions before the Magistrate Judge.

## FACTUAL AND PROCEDURAL BACKGROUND

Following Defendant's motion for summary judgment, the Magistrate Judge issued a Report and Recommendation dated May 18, 2018 [Dkt. No. 40], which addressed the issues of negligence per se, ordinary negligence, and gross negligence/recklessness. In that May 18, 2018 Report and Recommendation, the Magistrate Judge granted Defendant's motion for summary judgment on the issues of negligence per se and ordinary negligence but denied Defendant's motion on the issue of gross negligence/recklessness. Report and Recommendation [Dkt. No. 40] at 1, ¶ 2; 5 ¶ 3; 6, ¶ 2.

Regarding Plaintiff's ordinary negligence claim, in the R&R, the Magistrate Judge granted Defendant's motion for summary judgment holding that the Release signed by Plaintiff prior to embarking on the jet boat excursion was governed by federal maritime law, not New York State law. Relying heavily on the holding in Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100 (W.D.N.Y. 2011), the Magistrate Judge reasoned that the principal objective of the Release was related to participation in a jet boat excursion on navigable waters and therefore federal maritime law governed the release. As such, the pre-accident release of claims for negligence was valid and Plaintiffs' claim for negligence was dismissed. Report and Recommendation [Dkt. No. 40] at 5, ¶ 3; 6, ¶ 2.

Further, in the R&R the Magistrate Judge determined that the language of the Release, specifically the Defendant's statement it had "made every effort to keep this experience safe," was not a condition, the breach of which would render the Release unenforceable. Therefore, the Release was not invalidated by a breach of condition. Report and Recommendation [Dkt. No. 40] at 6, ¶ 3.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that '[t]he court shall grant summary judgment is the movant shows that there is no genuine dispute as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. Rockland Exposition Inc. v. Great American Assur. Co., 746 F.Supp.2d 528, 532 (S.D.N.Y. 2010). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law ...." Id. If the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars showing that a trial is needed ...." R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir.1984). In assessing whether each party has met their respective burden, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir.2004).

## ARGUMENT

Plaintiffs agree with the R&R finding denying Defendant's motion for summary judgment on the issue of gross negligence/recklessness. Nevertheless, Plaintiffs respectfully object to the recommendation that that federal maritime law applies to the Release thus barring Plaintiffs negligence claims and finds that the Release was not invalidated by a breach of condition.

### I.   New York State Law Should Govern the Release

Under federal maritime law, "a pre-accident waiver will absolve an owner or operator of liability for recreational accidents taking place on navigable waters where the exculpatory clause '(1) is clear and unambiguous; (2) is not inconsistent with public policy; and (3) is not an adhesion contract.'" Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100 (W.D.N.Y.

3

2011) *quoting* Charnis v. Watersport Pro, LLC, No. 07-CV-623, 2009 U.S. Dist. LEXIS 76022, 2009 WL 2581699, at *5 (D. Nev. May 1, 2009).

Plaintiffs concede that Plaintiff Sarah Witkowski's injury occurred under substantive maritime law. As such, substantive maritime law controls the rights and liabilities of the parties. However, state law may still apply to the extent that it "would not disturb the uniformity of maritime law." Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100 (W.D.N.Y. 2011) *quoting* Kossick v. United Fruit Co., 365 U.S. 731 (1961).

The Release is void as a matter of public policy under New York General Obligations Law § 5–326. Section 5-326 of the General Obligations Law renders void as against public policy and wholly unenforceable an agreement…

> ". . . in or in connection with, or collateral to, any contract, membership application ticket of admission or similar writing, entered into between the owner and operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees."

(G.O.L. § 5–326).

New York State Courts have held that the intent of Section 5-326 of the General Obligations Law was to eliminate the use of releases in commercial situations where there are potential dangers resulting from the types of activities being promoted, and where the proprietor of those activities is in substantial control of the environment. Dumez v. Harbor Jet Ski, Inc., 117 Misc.2d 249 (Sup. Ct. Niagara Cty. 1981). Specifically, a proprietor who is "in substantial control of the environment" will be subject to the nonwaivable duty imposed by the statute. Id. The Court in Dumez went so far as to hold that mere rental of equipment is insufficient to establish the control necessary to fall under the prevue of the statute. However, the imposition of a nonwaivable duty is permissible and reasonable where the environment can be controlled. Id.

While Plaintiffs recognize that such a holding is not controlling on this Court, it should be noted that the current case law, specifically Brozyna, cited in the R&R and relied upon by

Defendant, does not address this public policy argument. Report and Recommendation [Dkt. No. 40] at 4, ¶¶ 2-4; 5, ¶¶ 1-2; 6, ¶ 2.

In fact, with respect to the public policy argument advanced by Plaintiffs in their response to Defendant's motion for summary judgment, such a public policy argument has yet to be considered by this Court. While <u>Brozyna</u> did involve a claim for personal injuries sustained on a jet boat in the lower Niagara River, the plaintiffs in that case did not make any showing that the interests expressed in General Obligations Law § 5–326 against the national interest in the development of a uniform body of maritime law.

Here, the State of New York does have a strong policy interest in applying its law to the Niagara Jet Adventures release, as the Release covers activities which extend beyond the use of the vessel itself and apply to shore-based activities which are not traditionally maritime in nature, or integral to the Defendant's ability to accomplish its tasks as a recreational jet boat excursion.

It is undisputed that the Release included activities and issues which were substantially broader than maritime claims. Rachel Bohnenkamp testified that the Release "cover[ed] everything."

```
              36
14  Q.  Now, this release doesn't just cover
15  what happens on the water, does it?
16      A.  It covers everything as far as I know.
17      Q.  Well, for example, we want to talk
18  about activities that have nothing to do with the
19  water, off the water, it also contractually grants
20  Niagara Jet Adventures use of pictures, videos,
21  images, doesn't it?
22      A.  Yes.
23      Q.  It also actually includes release,
24  touches on impacts, what happens on the marina on
25  land, New York?
              37
1       A.  Yes.
2       Q.  It also actually specifically includes
3  anything that happens on shore at all as part of
4  this agreement with the passenger?
5       A.  Yes.
6       Q.  And y'all have always operated out of
7  New York State?
8       A.  Yes.
```

```
 9      Q.  The office address is Youngstown, but
10   the actual marina is not located in Youngstown, is
11   it or do you know?
12      A.  The marina?
13      Q.  Yes, ma'am.
14      A.  It's located in Youngstown.
15      Q.  The work and operations shore side are
16   all operated out of New York State?
17      A.  Yes.
```
[Dkt. No. 30-2] at 27-28.

The Release also included the property rights to photographs, videos, or other media. The Release also "covers all Niagara Jet Adventures complimentary transportation services, or those services provided by any outside 3rd party who transports me or my accompanying persons to and from the Niagara Jet Adventures experience." [Dkt. No. 28-8] at 1-2.

The language of the Release clearly outlines the activities and the environment in which those activities were expected to occur, all of which the Defendant maintained exclusive control over for the duration of the jet boat excursion, both on and off shore. Therefore, New York public policy regarding the application of its statutes to its own substantive common law, should overrule the interest of a harmonious maritime release doctrine.

It is of no moment that Plaintiff's particular injury occurred under the substantive Federal Maritime law. Instead, Courts look to the "the nature and character of the contract," to determine if a particular contract should be subject to maritime law, not the situs of an injury. Theriot v. Bay Drilling Corp., 783 F.2d 527, 538 (5th Cir. 1986). Indeed, if Plaintiff had suffered an injury while in Defendant's parking lot, there is little doubt that New York law would apply to the release, as the parking lot is under the exclusive control of the Defendant and Defendant would owe a non-waivable duty to Plaintiffs under General Obligations Law § 5-326. Yet regardless of the location of Plaintiff's injury, the nature and character of the contract is unchanged.

Therefore, it is respectfully submitted that the R&R erred in applying Federal Maritime Law to the Release, instead of New York law, and granting Defendant's motion for summary judgment.

6

### II.     The Release is Unenforceable Pursuant to 46 U.S.C. § 30509

In the case at bar, the Release relied upon by the defendant owner of a vessel transporting passengers clearly attempts to limit the owner's liability for negligence of that owner as to a passenger's personal injury. This Release is unenforceable as a matter of admiralty law pursuant to 46 U.S.C. § 30509. See Hambrook v. Smith, 2016 WL 4408991 (9th Cir. 2016). 46 U.S.C. § 30509, prohibits "the owner ... or agent of a vessel transporting passengers between ports in the United States. . ." from including in a "contract a provision limiting the liability of the owner ... or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents." 46 U.S.C. § 30509(a)(1)(A). See Johnson v. Royal Caribbean Cruises, Ltd, 449 Fed.Appx. 846 (11th Cir. 2011). Any such provision is rendered void and will not be enforced. 46 U.S.C. § 30509(a)(2). Id.

The unenforceability of such a release was specifically addressed in the case of Hambrook vs. Smith, Civ. No. 14-00132 in the District Court for Hawaii. In that case, the district court judge specifically found that the waiver executed by a scuba participant was unenforceable as to the negligence of the operator and the owner of a vessel. Referencing Matter of Pacific Adventures, Inc., 5 F. Supp. 2d 874 (D. Haw. 1998), which applied the statutory predecessor to Section 30509, the district court found liability against the operator and the owner of a scuba vessel for the death of a scuba participant.

The Hambrook Court noted that 46 U.S.C. § 30502 "applies to seagoing vessels and vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 2016 WL 4408991 (9th Cir. 2016). Accordingly, Niagara Jet Boat is a seagoing vessel and is subject to the restrictions of 46 U.S.C. § 30509.

It is clear based on the testimony of the parties that the activity which Plaintiff Sarah Witkowski took part in, riding on a jet boat during a tour of the lower Niagara River, was an activity directly related to Defendant's duty to provide safe transport of passengers. As such, the Release must be invalidated pursuant to 46 U.S.C. § 30509.

The application of 46 U.S.C. §§ 30502 and 30509 to the enforceability of a release and waiver was **not** addressed by the Court in Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100 (W.D.N.Y. 2011). In Brozyna, the Court only considered the applicability of General

7

Obligations Law § 5–326 against the national interest in the development of a uniform body of maritime law. Id.

"Congress's concern in enacting [section] 30509(a) was the unilateral imposition of bargaining power by a ship owner to limit its liability for its negligent acts," and it intended to stop ship owners from limiting liability "without any recourse to judicial process." DeLuca v. Royal Caribbean Cruises, Ltd., 244 F.Supp.3d 1342 (S.D. Fl Mar. 16, 2017) *quoting* Estate of Myhra, 695 F.3d at 1242, 1243 (11th Cir. 2018).

In comparing 46 U.S.C. §§ 30502 and 30509 to General Obligations Law § 5–326, it is clear these two sections comport with New York General Obligations Law 5-326 in protecting the rights of customers who engage in fee-based activities from the negligence of the owners or operators of those activities.

Therefore, it is respectfully submitted that the R&R erred in ruling the Release was enforceable as a matter of admiralty law.

### III. The Release Is Invalid Because Defendant Breached A Condition Of The Contract

The Release is invalid because Defendant failed to perform a material condition of the contract by failing to provide safe and adequate seating to Plaintiff.

Similar to New York common law, federal maritime law has adopted the general rules of contract interpretation and construction. See, e.g., United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775, 779 (11th Cir. 1990); Cashman Equip. Corp. v. M/V Godfather, No. 05-6271, 2007 U.S. Dist. LEXIS 21921, 2007 WL 934537, at *2 (E.D. La. Mar. 23, 2007). Generally, the nonoccurrence of a condition prevents the performance of a duty, subject to the condition, from becoming due. Restatement (Second) of Contracts § 225 cmt. a (1981). In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk. Restatement (Second) of Contracts § 227 (1981).

Here, in the contract, Defendant agreed that it had "made every effort to keep this experience safe." [Dkt. No. 28-8] at 1. Noticeably, this obligation was made in the past tense.

8

Defendant had "made every effort to keep this experience safe," as opposed to a continuing obligation to "make every effort to keep this experience safe." The R&R does not address this distinction. Report and Recommendation [Dkt. No. 40] at 6, ¶¶ 3-4. However, because the contract contemplated that this obligation had already occurred, this requirement was a condition to the agreement between the parties. More specifically, the parties conditioned Plaintiff's knowledge of the serious risks, in part based on Defendant's claimed effort to keep the experience safe prior to the excursion. Thus, if Defendant had not made efforts to keep the experience safe, then Defendant's failure to meet this condition would eliminate Plaintiff's knowledge of the serious risks of serious bodily injury.

Further emphasizing the importance of the condition, Defendant's testimony in this case confirms that this promise was an important "part of the deal."

```
              35
23     Q.  Is it 100 percent absolutely clear that
24  Niagara Jet Adventures in writing promises
25  passengers they've made every effort to keep this
              36
1  experience safe?
2     A.  Yes.
3     Q.  Is that part of the deal that you're
4  promising the passengers we'll make every effort to
5  keep this experience safe?
7     THE WITNESS: Yes.
8     BY MR. DOYLE:
9     Q.  Is that important?
10    A.  Yes.
11    Q.  How come?
12    A.  We want everybody to be safe and have a
13  good time.
```
[Dkt. No. 30-2] at 195.

It is evident from Defendant's testimony that the language of the Release was unambiguous and that Defendant intended to create a conditional obligation. Therefore, the language, "made every effort to keep this experience safe," created a condition. 13 Williston on Contracts, §38:13 (4th ed.).

Plaintiff's testimony further reiterated that her consent to the wavier was predicated on Defendant's effort to keep the excursion safe. For example, Plaintiff testified that based on the

9

waiver she understood "there could be [an] injury if we [didn't] follow directions, and that it could be unsafe for us if we [didn't follow directions]." [Dkt. No. 30-2] at 115.

In contrast to this condition, Defendant failed to follow even basic safety precautions prior to the excursion, much less make every effort to keep this experience safe. Indeed, Plaintiff's expert Captain Jamison testified that "Niagara Jet Adventures LLC (acting through its operator, vessel master, and crew) did not make every effort to keep this experience safe and consistent with reasonable safety practices of vessel operating in inland waterways." [Dkt. No. 30-2] at 9. Instead, "Niagara Jet Adventures LLC violated these anticipated and customary standards, as well as various federal and state regulations and laws, regarding the safe operation of a passenger vessel." Id. Therefore, Defendant breached a condition of the Release and the Release is invalid.

## CONCLUSION

For the foregoing reasons, Plaintiffs Sarah Witkowski and Scott Witkowski respectfully request that this Court decline to adopt the Report and Recommendation filed May 18, 2018 [Dkt. No. 40] as it relates to the findings that the effect of the Release is governed by federal maritime law and the Release's pre-accident release of claims for negligence is therefore valid, as well as the finding that the Release was not invalidated by a breach of a condition; deny Defendant's motion for summary judgement on those issues; and for such other and further relief as the Court deems just and proper.

**DATED:** Buffalo, New York
June 1, 2018

Christopher J. O'Brien, Esq.
O'Brien & Ford, P.C.
Attorneys for Plaintiffs
4925 Main Street, Suite 222
Buffalo, NY 14226
(716) 907-7777
cobrien@theobrienfirm.com

Michael Patrick Doyle
*Admitted pro hac vice*
Doyle LLP Trial Lawyers
3401 Allen Parkway, Suite 100
Houston, Texas 77019
Telephone:  (713) 571-1146
Facsimile:   (713) 571-1148
mdoyle@doylelawfirm.com

11

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document was forwarded to the following counsel of record on this this 1st day of June, 2018, via ECF service:

James E. Mercante, Esq.
Joseph R. Federici, Esq.
Rubin, Fiorella & Friedman, LLP
630 Third Street, 3rd Floor
New York, New York 10017
**Attorneys for Defendant**
**Niagara Jet Adventures, LLC**

_____
Christopher J. O'Brien, Esq.