UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



SARAH WITKOWSKI, and
SCOTT WITKOWSKI,

    Plaintiffs,

v.

NIAGARA JET ADVENTURES, LLC,

    Defendant.

16-CV-856
DECISION AND ORDER

In July 2016, the plaintiffs, Sarah and Scott Witkowski, were passengers on a jet boat operated by the defendant, Niagara Jet Adventures, LLC ("Niagara Jet"), when Sarah Witkowski was injured. The plaintiffs allege that her injuries were caused by Niagara Jet Adventure's negligence or "willful and reckless" conduct. Docket Item 11. Before the Court is the defendant's motion for summary judgment.

## BACKGROUND

### I. FACTUAL BACKGROUND

The following facts, "view[ed] in the light most favorable to [the Witkowskis], are taken from the record evidence." *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014). In July 2016, Sarah and Scott Witkowski and their four sons reserved seats on a lower Niagara River jet boat excursion with Niagara Jet. Docket Item 38-6 at 1. After arriving at Niagara Jet's marina, Sarah Witkowski noticed a safety video playing in the

background. *Id.* Sarah also "looked at" and signed a "Release and Waiver of Liability, Assumption of Risk and Indemnity." Docket Item 30-1 at 2. The release provided:

> I fully understand that although Niagara Jet Adventures has made every effort to keep this experience safe, this experience could involve risks of serious bodily injury . . . which may be caused by . . . the conditions in which the experience takes place, or the negligence of any of the "Releases" listed below; and that there may be other risks either not known to me or not readily foreseeable at this time; and I fully accept and assume all such risks and all responsibilities for losses, costs and damages I incur as a result of my participation in the experience.
>
> I hereby release [and] discharge . . . Niagara Jet Adventures LLC . . . from all liability, claims, demands, losses, or damages . . . caused or alleged to be caused in whole or in part by the negligence of the "Niagara Jet Adventures" or otherwise . . . .
>
> I have read this RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK, AND INDEMNITY AGREEMENT, understand that I have given up substantial rights by signing it and have signed it freely and without any inducement, or assurance of any nature and intend it to be a complete and unconditional release of liability to the greatest extent allowed by law . . . .

Docket Item 28-8 at 1.

At Sarah's request, Niagara Jet seated her on a "bench seat" with her son and her husband. Docket Item 30-1 at 4. Near the end of the ride, the vessel master took the vessel upstream through the Niagara River rapids, attempting to drive the vessel into a wave to force water onto passengers onboard the vessel. *Id.* at 5. When the vessel hit the waves, Sarah was forced up from her seat. *Id.* Her arms were pinned under a metal bar, she hit another metal bar on her right side, and she collided with her family members. *Id.* After the boat returned to shore, Sarah went to the hospital to seek treatment for her injuries. Docket Item 28-10 at 111, 116-17.

The next day, Scott Witkowski called Niagara Jet and left a message. Docket Item 30-2 at 272. In the early afternoon, Chris Bohnenkamp, the owner of Niagara Jet, returned his call. *Id.* Bohnenkamp offered to pay for the costs of the hospital visit and,

2

according to Scott, said that "three in a seat is a big-no-no on this boat[,] . . . and my staff knows this." *Id.* at 273.

## II. PROCEDURAL HISTORY

In September 2016, the plaintiffs commenced this action in state court, and in October 2016, the defendant removed it to this Court. Docket Item 1. On December 22, 2016, the case was referred to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Docket Item 4. On August 31, 2017, the defendant moved for summary judgment, Docket Item 27; on September 28, 2017, the plaintiffs responded, Docket Item 30; and on November 17, 2017, the defendant replied, Docket Item 37.

On May 18, 2018, Judge McCarthy issued a Report and Recommendation ("R&R") finding that the defendant's motion should be granted in part and denied in part. Docket Item 40. Specifically, Judge McCarthy made the following findings. First, in response to the plaintiffs' argument that the release covers only claims of negligence—not claims of negligence *per se* based on an alleged failure to comply with a safety statute—Judge McCarthy found that the plaintiffs' "failure to properly plead negligence *per se* should bar such claims from being raised now for the first time in opposition to a motion for summary judgment." *Id.* at 3 (citation omitted). Second, Judge McCarthy found that federal maritime law, not New York law, determines whether the release that Sarah Witkowski signed bars the plaintiffs' claims. *Id.* Third, Judge McCarthy rejected the plaintiffs' argument that a provision in the release—that "Niagara Jet Adventures has made every effort to keep this experience safe"—was a condition predicate to the release's enforceability. *Id.* Finally, Judge McCarthy determined that the release did

3

not preclude claims of gross negligence or recklessness and that those claims may proceed to trial because the defendant had not met its burden of establishing that no reasonable jury could find such conduct. *Id.* at 7-8.

On June 1, 2018, both sides objected to the R&R. Docket Items 41, 43. On June 25, 2018, both sides responded to each other's objections, Docket Items 46, 47; and on July 16, 2018, both sides replied, Docket Items 50, 51. On October 31, 2019, the Witkowskis requested oral argument on the matter. Docket Item 52. The defendant opposed that motion. Docket Item 53.

## **DISCUSSION**

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C.§ 636(b)(1); Fed. R. Civ. P. § 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C.§ 636(b)(1); Fed. R. Civ. P. § 72(b)(3).

Niagara Jet objects to Judge McCarthy's R&R on the grounds that even viewing the evidence in the light most favorable to the plaintiffs, no reasonable fact finder could find gross negligence or recklessness. Docket Item 41 at 10-16. For their part, the plaintiffs raise three objections. Docket Item 43 at 7-14. First, they argue that Judge McCarthy erred in determining that federal maritime law, as opposed to New York law, applies to the release. *Id.* at 7-10. Second, they contend that the release is unenforceable under 46 U.S.C.§ 30509. *Id.* at 11-12. Finally, they contest Judge McCarthy's determination that provisions of the release noting that Niagara Jet had

4

"made every effort to keep this experience safe" are not conditions of the contract. *Id.* at 12-14.

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the objections and responses, and the pleadings and materials submitted by the parties. Based on that *de novo* review, and for the following reasons, the Court accepts and adopts Judge McCarthy's recommendation to grant the defendant's motion in part.

### I. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (quoting Fed. R. Civ. P.§ 56). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)). To make this determination, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

### II. THE APPLICABILITY OF THE RELEASE

The plaintiffs first object to Judge McCarthy's finding that federal maritime law governs the enforceability of the release. Docket Item 43 at 7-10. The Court is not persuaded and adopts Judge McCarthy's recommendation.

5

For the reasons stated in Judge McCarthy's R&R and by Judge Curtin in *Brozyna v. Niagara Gorge Jetboating, Ltd.*, 2011 WL 4553100 (W.D.N.Y. Sept. 29, 2011), federal admiralty law governs the release. But "even where (as here) substantive admiralty law controls the rights and liabilities of the parties, state law may nonetheless apply to the extent that it 'would not disturb the uniformity of [federal] maritime law.'" *Brozyna*, 2011 WL 4553100, at *5 (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 738 (1961)). To balance federal and state interests, "state law applies where [(1)] no applicable admiralty rule exists, [(2)] . . . local and state interests predominate[,] and [(3)] . . . the uniformity principle is not crucial." *Id.* (quoting *Stanley v. Bertram-Trojan, Inc.*, 868 F. Supp. 541, 543 (S.D.N.Y. 1994); *cf. Am. Dredging Co. v. Miller*, 510 U.S. 443, 452, 447 (1994) (holding that state law does not apply in an admiralty case when the state law "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations" (quoting *S. Pac. Co. v. Jensen*, 244 U.S. 205, 216 (1917)); *Diesel "Repower", Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1323 (11th Cir. 2001) ("If there is an admiralty-state law conflict, the comparative interest must be considered—they may be such that admiralty shall prevail or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect." (quoting *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir. 1986)).

As to the first element of the federal-state conflict inquiry, the established federal admiralty rule is that "a pre-accident waiver will absolve an owner or operator of liability for recreational accidents taking place on navigable waters where the exculpatory clause '(1) is clear and unambiguous; (2) is not inconsistent with public policy; and (3) is

not an adhesion contraction.'" *Brozyna*, 2011 WL 4553100, at *4 (quoting *Charnis v. Watersport Pro, LLC*, 2009 WL 2581699, at *5 (D. Nev. May 1, 2009)). New York law, by contrast, may blanketly prohibit the enforcement of such waivers. *See* N.Y. Gen. Oblig. Law§ 5-326 (barring operators of recreational facilities from enforcing pre-accident waivers of liability for their negligence). In other words, "there [is] a clear conflict between federal admiralty law—which, like the common law of many states, permits the enforcement of liability waivers subject to certain caveats—and General Obligations Law§ 5–326—which, in derogation of the common law, completely precludes negligence waivers for certain classes of recreational activities." *In re Rockaway Jet Ski, LLC*, 2016 WL 8861617, at *8 (E.D.N.Y. Dec. 19, 2016). Therefore, state law is relevant to determining the enforceability of the waiver at issue here only to the extent that it informs the second element of the federal admiralty rule regarding waivers—that is, only to the extent that state law demonstrates that enforcement of the waiver would be against *federal* public policy.[1]

But in support of their argument that the waiver is against federal public policy, the Witkowskis rely exclusively on the "strong policy interest[s]" underlying section 5-326. Docket Item 43 at 9; *see also id.* at 8 (arguing that the purpose of section 5-326 was to "eliminate the use of releases in commercial situations where there are potential dangers resulting from the types of activities being promoted, and where the proprietor of those activities is in substantial control of the environment"); *Stone v. Bridgehampton Race Circuit*, 629 N.Y.S.2d 80, 81 (N.Y. App. Div. 1995) (explaining that section 5-326

---

[1] The plaintiffs do not dispute that the first and third elements of the federal admiralty rule regarding waivers are satisfied. *See* Docket Item 43 at 7-10.

reflects a legislative determination that "members of the general public patronizing proprietary recreational and amusement facilities are commonly . . . unappreciative of the legal consequences" of releases such as the one in issue in this case). They do not point to any federal statutory or case law suggesting that pre-accident waivers for negligence are against public policy.

On the contrary, the weight of the evidence belies the Witkowskis' argument. "[T]here is a clearly stated rule in maritime jurisprudence in favor of allowing parties to enter into enforceable agreements to allocate the risks inherent in marine recreational activities . . . [and a] long-recognized national interest in the development of a uniform body of maritime law." *Brozyna*, 2011 WL 4553100, at *5 (collecting cases). Indeed, New York appears to be an outlier among the states in rejecting the common law's acceptance of such pre-accident negligence waivers. *See Rockaway Jet Ski*, 2016 WL 8861617, at *8.[2]

---

[2] *Cf. id.* at *5, *7-*8 (applying state law to void waiver in admiralty suit for negligence *per se* because (1) there was no "established admiralty rule" on the enforceability of a waiver that would preclude a negligence claim premised on the violation of a statute and the plaintiffs had pointed to a federal statute, 46 U.S.C.§ 13102, that "suggest[ed] Congress intended for states to play a role in regulating recreational boat safety"; (2) the fact that numerous state court opinions had found such provisions unenforceable suggested they were contrary to public policy; and (3) enforcement of the underlying state statute, which "simply require[d] that the renters of recreational personal watercraft receive certain initial instructions and supervision," would not "interfer[e] with the proper harmony and uniformity of [maritime] law" (third bracket in original) (citation omitted)).

To the extent the Witkowskis argue that 42 U.S.C.§ 30509 supplies the needed federal policy preference, see Docket Item 43 at 11-12, that argument misses the mark.[3] Section 30509 provides:

> The owner, master, manager, or agent of a vessel transporting passengers *between ports* in the United States, or *between a port in the United States and a port in a foreign country*, may not include in a regulation or contract a provision limiting—
>
> (A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or
>
> (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction

42 U.S.C.§ 30509(a)(1) (emphasis added). It is undisputed that the plaintiffs' voyage on Niagara Jet's vessel departed and returned from the same port.[4] By its terms, therefore, section 30509 does not apply to prohibit Niagara Jet's use of the release to limit its liability.

This Court also is unpersuaded by the Witkowskis' argument that the waiver is unenforceable because it "covers activities which extend beyond the use of the vessel itself and apply to shore-based activities which are not traditionally maritime in nature, or integral to the [d]efendant's ability to accomplish its tasks as a recreational jet boat

---

[3] The defendant argues that the plaintiffs waived this argument by not raising it before the magistrate. See Docket Item 45. The Court need not resolve that question because it has determined that, even assuming the issue was not waived, the argument has no force.

[4] Citing 1 U.S.C.§ 1, the plaintiffs argue that because "the plural includes the singular" in interpreting federal statutes "unless the context indicates otherwise," the word "ports" includes a single port, and a vessel that leaves from and returns to the same port therefore is covered. See Docket Item 50 at 2-3. But that argument ignores the word "between" in 42 U.S.C. § 30509—a word that necessarily provides context indicating that the plural cannot include the singular in this instance.

9

excursion." Docket Item 43 at 9. The inquiry about the scope of the release is holistic, however, asking not whether each covered incident is strictly, and standing alone, maritime in nature, but instead whether "the principal objective of [the] contract is maritime commerce." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004). For the reasons stated in Judge McCarthy's R&R, the principal objective of the release here is maritime commerce. *See* Docket Item 40 at 5.

In short, the Witkowskis have not demonstrated that enforcement of the waiver would be inconsistent with public policy. The Court therefore adopts Judge McCarthy's recommendations to apply federal maritime law, find the release valid, and grant the defendant's motion for summary judgment with respect to the plaintiffs' claims of negligence.

### III. THE DEFENDANT'S ALLEGED BREACH OF A CONDITION OF THE CONTRACT

The plaintiffs also argue that "the [r]elease is invalid because [the d]efendant failed to perform a material condition of the contract by failing to provide safe and adequate seating to [the p]laintiff." Docket Item 43 at 12-14. According to the release, the signer agrees that "I fully understand that although Niagara Jet Adventures has made every effort to keep this experience safe, this experience could involve risks of serious bodily injury[,] . . . and I fully accept and assume all such risks and all responsibilities for losses, costs and damages I incur as a result of my participation in the experience." Docket Item 28-8 at 1. But for the reasons stated by Judge McCarthy, this provision is not a condition. Indeed, as Judge McCarthy aptly observed, reading the waiver in the way that the plaintiffs suggest would mean that "the waiver would be pointless." Docket Item 40 at 6.

## IV. GROSS NEGLIGENCE

Finally, the defendant argues that, on this record, no reasonable fact finder could find that it was grossly negligent. Docket Item 41 at 10-16. For the reasons stated in Judge McCarthy's R&R, a reasonable factfinder could conclude that the defendant was grossly negligent or reckless in seating three people on the same bench. *See* Docket Item 40 at 7-8.

The defendant argues that a reasonable jury could not find gross negligence or recklessness because, among other reasons, plaintiff Sarah Witkowski never felt in danger and actually requested the seating arrangement that the plaintiffs now claim was grossly negligent; plaintiff Scott Witkowski later said that his family would take the trip again and asked for free tickets; and the plaintiffs' children sat "comfortably" and had "fun" during the trip. *See, e.g.*, Docket Item 51 at 10-11; *see also id.* at 7-10; Docket Item 41 at 15-16. Similarly, the defendant observes that the plaintiffs did not allege gross negligence in their original complaint and added that allegation only after the waiver issue was raised "in a transparent effort to avoid summary judgment." *See id.* at 12, 16; *see also* Docket Item 51 at 12 (arguing that if there truly were evidence of gross negligence, the "plaintiffs would have made such allegations in their initial complaint—not after being reminded about the release").

But none of that is of any moment. Whether or not the plaintiffs should have thought of it earlier, the claim of gross negligence was raised in the amended complaint and is now a part of this lawsuit. *See* Docket Item 11; *see also Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect."). And the fact that the plaintiffs may have wanted the seating arrangement that they now claim was dangerous

11

and that they enjoyed the thrill ride matters not one whit. The plaintiffs offered evidence that the defendant's owner said that the seating arrangement was dangerous and that his staff knew just that. See Docket Item 30-2 at 273. And they offered an expert opinion to that effect as well. See Docket Item 30-2 at 6-9. The defendant's denial of the alleged statement of its owner and disagreement with the plaintiffs' expert only create issues of fact for the jury. For these reasons and those in the R&R, the Court adopts Judge McCarthy's recommendation that the defendant's motion for summary judgment be denied in part.

## **CONCLUSION**

For the reasons stated above and in the R&R, the defendant's motion for summary judgment, Docket Item 27, is GRANTED in part and DENIED in part; the plaintiffs' claims for negligence are dismissed; and the plaintiffs' motion for oral argument is DENIED as moot. The case is referred back to Judge McCarthy for further proceedings consistent with the referral order of December 22, 2016, Docket Item 4.

SO ORDERED.

Dated: January 27, 2020
Buffalo, New York

_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE